## NO. 25-50116

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

De Lois Phillips, Individually, and as Independent Executrix of the Estate of Fred Steven Phillips, Deceased; Amy Leanne Phillips; Laura Kylene Phillips Sublett; Kalli Janette Phillips Jackson; Stefanie Dene' Phillips Feller,

Plaintiffs – Appellants,

v.

Ethicon Endo-Surgery, Incorporated,

Defendant – Appellee,

consolidated with

---

## NO. 25-50308

---

De Lois Phillips, Individually, and as Independent Executrix of the Estate of Fred Steven Phillips, Deceased; Amy Leanne Phillips; Laura Kyle Phillips Sublett; Kalli Janette Phillips Jackson; Stefanie Dene' Phillips Feller,

Plaintiffs – Appellants,

v.

Johnson and Johnson Company, A New Jersey Corporation; Johnson & Johnson Healthcare Systems, Incorporated; Ethicon US, L.L.C.,

Defendants – Appellees

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS AUSTIN DIVISION
CIVIL ACTIONS: No. 1:23-CV-00515-RP; AND No.1:24-CV-00775-RP

---

# BRIEF OF PLAINTIFFS-APPELLANTS

Shelby J. White
State Bar No. 24084086
swhite@dpslawgroup.com
Thad D. Spalding
State Bar No. 00791708
tspalding@dpslawgroup.com
DURHAM, PITTARD &
SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 – Facsimile

Blake C. Erskine, Jr.
Federal Bar No. 27042
State Bar No. 00786383
berskine@erskine-blackburn.com
ERSKINE & BLACKBURN, PLLC
6618 Sitio del Rio Blvd., Building C-101
Austin, Texas 78730
(512) 684-8900 – Office
(512) 684-8920 – Facsimile

Rockne W. Onstad
State Bar No. 15291000
rock@onstadlaw.com
THE ONSTAD LAW FIRM
11716 Shadestone Terrace
Austin, Texas 78732
(512) 820-0808 – Office
(512) 572-8218 -- Facsimile

## ATTORNEYS FOR PLAINTIFFS-APPELLANTS

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellants | Counsel for Plaintiffs-Appellants |
| --- | --- |
| **De Lois Phillips, Individually and as Independent Executrix of the Estate of Fred Steven Phillips, Deceased** | **Trial Counsel:** Blake Erskine, Jr. of Erskine & Blackburn, PLLC, Austin, Texas **Trial Counsel:** Rockne Onstad Austin, Texas **Appellate Counsel:** Shelby White and Thad Spalding of Durham, Pittard & Spalding, LLP, Dallas, Texas |
| **Amy Leanne Phillips** | **Trial Counsel:** Blake Erskine, Jr. of Erskine & Blackburn, PLLC, Austin, Texas **Trial Counsel:** Rockne Onstad Austin, Texas **Appellate Counsel:** Shelby White and Thad Spalding of Durham, Pittard & Spalding, LLP, Dallas, Texas |
| *Continues, next page….* | |

| Plaintiffs-Appellants | Counsel for Plaintiffs-Appellants |
|---|---|
| **Laura Kylene Phillips Sublett** | **Trial Counsel:**<br>Blake Erskine, Jr. of Erskine & Blackburn, PLLC, Austin, Texas<br><br>**Trial Counsel:**<br>Rockne Onstad Austin, Texas<br><br>**Lead Appellate Counsel:**<br>Shelby White and Thad Spalding of Durham, Pittard & Spalding, LLP, Dallas, Texas |
| **Stefanie Dene' Phillips Feller** | **Trial Counsel:**<br>Blake Erskine, Jr. of Erskine & Blackburn, PLLC, Austin, Texas<br><br>**Trial Counsel:**<br>Rockne Onstad Austin, Texas<br><br>**Appellate Counsel:**<br>Shelby White and Thad Spalding of Durham, Pittard & Spalding, LLP, Dallas, Texas |
| **Defendants-Appellees** | **Counsel for Defendants-Appellees** |
| **Ethicon Endo-Surgery, Incorporated** | **Trial and Appellate Counsel:**<br>Timothy E. Hudson, Jake M. Winslett, and Jenna Johnson of Barnes & Thornburg, LLP, Dallas, Texas |
| **Johnson and Johnson Company, a New Jersey Corporation; Johnson & Johnson Healthcare Systems, Incorporated; Ethicon US, LLC** | **Trial and Appellate Counsel:**<br>Timothy E. Hudson, Jake M. Winslett, and Jenna Johnson of Barnes & Thornburg, LLP, Dallas, Texas |

*/s/ Shelby J. White*
Shelby J. White

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. The facts forming the basis of this lawsuit are complex and intensive, and Plaintiffs respectfully suggest that the Court would benefit from oral argument that may shed further light upon the evidence presented to the District Court.

# TABLE OF CONTENTS

PAGE

Certificate Of Interested Persons ........................................................3

Statement Regarding Oral Argument...............................................5

Table Of Contents.................................................................................6

Table Of Authorities ..........................................................................8

Jurisdictional Statement ...................................................................11

Statement of Issues Presented on Appeal ........................................12

Statement of the Case .......................................................................13

I.    Steven Phillips goes into septic shock and organ failure and
      dies after a staple line failure during his colectomy surgery..............13

II.   Appellants seek to discover the manufacturer and seller of
      the stapler and staples used in the surgery. .........................................15

III.  As litigation proceeds, Appellants discover new information
      that was previously withheld as to the sellers of the Stapler
      and Staples...........................................................................................17

IV.   Appellants file their second suit in state court with additional
      defendants. ..........................................................................................23

Summary of the Argument..............................................................26

Argument and Authorities ...............................................................28

I.    Standard of review. .............................................................................28

II.   Appellants sufficiently stated a claim for breach of implied
      warranty of merchantability...............................................................29

      A.    The foundational requirements to plead a breach of
            implied warranty of merchantability claim. ...............................29

B.      Appellants adequately pled a claim for breach of an
        implied warranty. ...........................................................................31

C.      The district court erred in denying Appellants an
        opportunity to amend. ..................................................................36

D.      Appellants should be allowed to correct any defect in
        presuit notice on refiling. ............................................................37

III.  Because the district court erred in dismissing *Phillips I* with
      prejudice, the district court also erred in dismissing *Phillips II*
      on res judicata and collateral estoppel grounds. ..................................38

Conclusion And Prayer .........................................................................43

Certificate Of Compliance ...................................................................45

Certificate Of Service ...........................................................................46

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................36

*Bedgood v. Nissan N. Am., Inc.*,
    No. A-16-CA-00281-SS, 2016 WL 3566689 (W.D. Tex. June 24,
    2016) .............................................................................31

*Benitez v. AmGUARD Ins. Co.*,
    No. 24-20140, 2024 WL 4987246 (5th Cir. Dec. 5, 2024) ..............30

*Burrell v. Allstate Prop.*,
    No. 3:13-CV-493-CWR-FKB, 2015 WL 12979204 (S.D. Miss.
    June 3, 2015) ....................................................................36

*Chitimacha Tribe of Louisiana v. Harry L. Laws Company, Inc.*,
    690 F.2d 1157 (5th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983) ..................43

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000)...............................................33

*Cooper Tire & Rubber Co. v. Mendez*,
    204 S.W.3d 797 (Tex. 2006)...............................................31

*Dussouy v. Gulf Coast Inv. Corp.*,
    660 F.2d 594 (5th Cir. 1981).........................................41, 42

*Equistar Chem., L.P. v. Dresser-Rand Co.*,
    240 S.W.3d 864 (Tex. 2007)...............................................31

*Foster v. Daon Corp.*,
    713 F.2d 148 (5th Cir. 1983)........................................39, 41, 43

*George v. SI Group, Inc.*,
    36 F.4th 611 (5th Cir. 2022)...............................................29

*Hale v. King*,
    642 F.3d 492 (5th Cir. 2011)...............................................29

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014)..........................................................................30

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982)......................................................29

*King v. Dogan*,
    31 F.3d 344 (5th Cir. 1994)..........................................................40

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination
    Unit*,
    507 U.S. 163 (1993)......................................................................29

*Lormand v. U.S. Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009).........................................................30

*Lowrey v. Texas A & M University System*,
    117 F.3d 242 (5th Cir. 1997).........................................................43

*Mann v. Adams Realty Co.*,
    556 F.2d 288 (5th Cir. 1977).........................................................29

*McKay v. Novartis Pharm. Corp.*,
    751 F.3d 694 (5th Cir. 2014).........................................................39

*Nance v. Gulf Oil Corporation*,
    817 F.2d 1176 (5th Cir. 1987).......................................................43

*Plas-Tex, Inc. v. U.S. Steel Corp.*,
    772 S.W.2d 442 (Tex. 1989)..............................................31, 34, 36

*In re S. Scrap Material Co.*,
    541 F.3d 584 (5th Cir. 2008).........................................................32

*Sanchez v. KHBJR Enter. LLC*,
    No. SA-17-CV-00811-DAE, 2017 WL 10841345 (W.D. Tex.
    Nov. 15, 2017) ...............................................................................40

*Sewell v. Monroe City Sch. Bd.*,
    974 F.3d 577 (5th Cir. 2020).........................................................29

*Sipes v. Gen. Motors Corp.*,
    946 S.W.2d 143 (Tex. App.—Texarkana 1997, writ denied) ......................31

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ............................................................................30

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011) ............................................................................30

*Youmans v. Simon*,
    791 F.2d 341 (5th Cir. 1986) ............................................................................43

## Statutes & Rules

Fed. R. Civ. P. 12(b)(6) ..................................................................................29, 30

Fed. R. Civ. P. 15(a) .........................................................................................*passim*

## JURISDICTIONAL STATEMENT

These two consolidated cases are breach of implied warranty of merchantability cases between Plaintiffs-Appellants, who are all citizens and residents of Texas, and Defendant-Appellees, who are citizens and residents of Ohio and New Jersey, and involving an amount in controversy in excess of the jurisdictional minimum. The district court thus had diversity jurisdiction over both matters pursuant to 28 U.S.C. §1332(a)(1).

This Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291 because in Cause No. 1:23-cv-00515, the district court entered a Final Judgment on July 11, 2024 (ROA.25-50116.238) and a subsequent Order on Appellants' Motion for Reconsideration on January 29, 2025, and in Cause No. 1:24-cv-00775, the district court entered its Final Judgment on April 2, 2024 (ROA.25-50308.237).

Appellees timely filed their Notices of Appeal on February 18, 2025, (ROA.25-50116.464) and April 10, 2025, (ROA.25-50308.238) and this Court granted Appellants' unopposed motion to consolidate the two related appeals.

## STATEMENT OF ISSUES PRESENTED ON APPEAL

<u>Issue No. 1:</u>   The district court erred when it granted Ethicon Endo-Surgery's Rule 12(b)(6) motion to dismiss Appellants' breach of implied warranty of merchantability claim with prejudice in the first suit because:

    A.  Appellants properly alleged a defect to support the breach of implied warranty claim;

    B.   The district court denied Appellants any meaningful opportunity to amend under Rule 15(a); and

    C.  The district court should have dismissed Appellants' claims without prejudice to give Appellants the opportunity to cure any defect in presuit notice.

<u>Issue No. 2:</u>   Because the district court erred in dismissing the first suit with prejudice, Appellants' second filed suit should not have been dismissed on res judicata or collateral estoppel grounds.

**STATEMENT OF THE CASE**

## I.    Steven Phillips goes into septic shock and organ failure and dies after a staple line failure during his colectomy surgery.

On September 15, 2021, Steven Phillips underwent an elective robotic-assisted laparoscopic segmental traverse colectomy to remove precancerous tissue on September 15, 2021, at Hill Country Memorial Hospital ("HCMH") in Fredericksburg, Texas. ROA.25-50116.127. Lance C. Love, M.D. ("Dr. Love") was the surgeon who performed the operation. ROA.25-50116.127.

As part of the procedure, a section of Phillips's colon was removed, and a surgical stapler was used to create a functional isoperistaltic side-by-side stapled colocolostomy. ROA.25-50116.127. The surgical staples are loaded into a surgical stapler, which fires the staples blindly into the tissue, joining two sections of the large intestine together, to create what is called an anastomosis. ROA.25-50116.127.

Dr. Love tested the anastomosis before finishing the surgery, and believed it was normal. ROA.25-50116.127. Following that surgery, the product in question was discarded into the trash, which was standard procedure. ROA.25-50116.287. After the surgery was completed, Phillips was discharged from HCMH on September 17, 2021. ROA.25-50116.127.

On September 23, 2021, Phillips was re-admitted to HCMH due to a leak at the site of the anastomosis. During a second surgery, Dr. Love discovered that the anastomosis was leaking feculent contents into the abdominal cavity, and the source of the leak was at the staple line. ROA.25-50116.128. The section of bowel where the leak was located was removed and sent to pathology for examination. ROA.25-50116.128. Importantly, Dr. Love found no evidence of tension, torsion, ischemia (i.e., narrowed or blocked blood vessels), or bleeding. ROA.25-50116.128.

Pathologist Shari Addington, M.D. examined the tissue Dr. Love removed. ROA.25-50116.128. She found there was a 2.0 x 2.0 cm transmural defect in the anastomotic staple line. ROA.25-50116.128. That defect is also known as a "staple line dehiscence" caused by a failure of the staples. ROA.25-50116.128. In layman's terms, the joined sections of the bowel came apart at the staple line. Dr. Addington found no pathological abnormality of the tissue where the 2.0 x 2.0 cm transmural defect was located. ROA.25-50116.128.

The failure of the anastomotic staple line caused Phillips to go into septic shock and organ failure, and he eventually died as a result on June 6, 2022. ROA.25-50116.128.

## II.    Appellants seek to discover the manufacturer and seller of the stapler and staples used in the surgery.

Dr. Love documented using a "GIA" stapler to create the anastomosis in question.  "GIA" is a generic term that could include one of multiple surgical stapling systems manufactured by multiple manufacturers. ROA.25-50116.278. On October 18, 2022, Appellants' trial counsel sent a claim notice letter to HCMH seeking information about the identity of the "product in question." ROA.25-50116.266.  HCMH's counsel responded on November 9, 2022, and provided an Operating Room Billing List and a Purchase Order, among other things. ROA.25-50116.266.

The Operating Room Billing List showed that Phillips was billed for a "Stapler Linear 75MM" stapler and also for a "Robotic Stapler Sureform 60MM." ROA.25-50116.315.  The Purchase Order documented the purchase of a Stapler Linear 75MM and Stapler Linear Reload Blue from J&J Healthcare Systems, Inc. by HCMH on 09/10/21 and delivery on 09/16/21, one day *after* Phillips's surgery. ROA.25-50116.316. Given that information, Appellants had reason to believe that the devices used in Phillips's surgery *were not* sold by J&J Healthcare Systems.

To get clarity on which stapler on the operating room billing list was the GIA stapler Dr. Love used in Phillips's surgery on September 15, 2021, a conference call was arranged with Dr. Love, Dr. Arrington, the risk manager for HCMH, counsel for HCMH, and counsel for Appellants. ROA.25-50116.277.  According to Dr. Love, he believed that the GIA stapler he used on September 15, 2021, was the "Robotic Stapler Sureform 60MM" sold by Intuitive Surgical, Inc. ROA.25-50116.277.

Based on Dr. Love's representation, Appellants filed a lawsuit against Intuitive, *Phillips v. Intuitive Surgical, Inc.,* 1:22-cv-1335-RP, in the United States District Court for the Western District of Texas Austin Division. Subsequently, Intuitive provided internal documentation that proved its stapler could not have been used in the September 15, 2021, surgery. ROA.25-50116.278.

Dr. Love was deposed on May 2, 2023, and testified he was wrong in believing that the Intuitive stapler was used. ROA.25-50116.277-78.   He testified that the Stapler Linear 75MM and Stapler Linear Reload Blue that was manufactured by Appellee Ethicon Endo-Surgery, Inc. was used. ROA.25-50116.278.

Appellants dismissed their case against Intuitive and filed suit against Appellees Ethicon Endo-Surgery, Inc., Johnson & Johnson, and Ethicon, Inc. on May 9, 2023 (the "*Phillips I*" suit).    ROA.25-50116.11. On May 18, 2023, Appellants gave notice to all of the Johnson & Johnson entities[1], even those who were not parties to the suit at the time. ROA.25-50116.479. After receiving the notice documents, Johnson & Johnson noted in its "complaint detail report" that the report contained information that reasonably suggested that one of the company's devices (the medical stapler and staples) had caused or contributed to a death. ROA.25-50116.482.

## III.  As litigation proceeds, Appellants discover new information that was previously withheld as to the sellers of the Stapler and Staples.

On June 23, 2023, Appellees Ethicon Endo-Surgery, Inc., Johnson & Johnson, and Ethicon, Inc. filed their Rule 12(b)(6) motion to dismiss. ROA.25-50116.47.  While the motion was pending, Appellees, in response to interrogatories, asserted that (1) the "Ethicon Stapler Linear 75MM" is a generic product description that may comprise of several specific product

---

[1] Johnson & Johnson is the ultimate parent company of Ethicon Endo-Surgery. ROA.25-50308.186. Ethicon Endo-Surgery is the sole member, i.e., the parent, of Ethicon US, LLC. ROA.25-50308.186. J & J Healthcare System is a wholly-owned subsidiary of Johnson & Johnson. ROA.25-50308.187. Ethicon, Inc. is also a wholly-owned subsidiary of Johnson & Johnson. ROA.25-50116.12.

codes, and (2) *that Ethicon Endo-Surgery was the only "entity responsible for placing surgical stapler devices into the stream of commerce*." ROA.25-50116.268 (emphasis added). Ethicon Endo-Surgery further stated that "J&J Healthcare Systems, Inc. is not responsible for placing the device ... into the stream of commerce." ROA.25-50116.269.

Based on these representations, Appellants amended their complaint on January 8, 2024, mooting the dismissal motion, and dismissed Johnson & Johnson and Ethicon, Inc. from the suit. ROA.25-50116.125; ROA.25-50116.144. The Court granted the parties Joint Stipulation of Dismissal of Ethicon, Inc. and Johnson & Johnson without prejudice. ROA.25-50116.147. Importantly, the first motion to dismiss was never ruled on or considered by the court.

After Appellants' First Amended Original Complaint was filed, Ethicon Endo-Surgery filed a second motion to dismiss on January 22, 2024. ROA.25-50116.149. In that motion, Ethicon Endo-Surgery alleged that Appellants' implied warranty of merchantability claim was defectively pled and that they did not have presuit notice of the claim. ROA.25-50116.152. Appellants responded shortly thereafter, on January 26, 2024. ROA.25-50116.162. At the time, Appellants did not yet have complete discovery to

submit their Second Amended Complaint because they needed the depositions of Ms. Polivka and Dr. Love, to be taken on April 24 and 25 respectively. Moreover, the parties had a scheduling order in place that allowed Appellants to amend their complaint or join additional parties on or before July 1, 2024. ROA.25-50116.178.

On February 9, 2024, the Parties filed a Joint Report on Alternative Dispute Resolution stating the parties agreed to mediate case on June 26, 2024, before Tom Mitchell. ROA.25-50116.194. The parties engaged in discovery through serving and responding to interrogatories and request for production and the taking of depositions. ROA.25-50116.269-270. Importantly, Appellants continued to press Ethicon Endo-Surgery's counsel for the identity of all the sellers.

On April 24, 2024, Appellants deposed the HCMH risk manager, Maureen Polivka, who testified the delivery date of September 16, 2021, on the Purchase Order was wrong as it was only the expected delivery date. She testified the Stapler and Staples were actually delivered early on September 14, 2021, and used in the September 15, 2021, surgery in question on Phillips. ROA.25-50116.316, ROA.25-50116.269-270. Thus, on April 24, 2024, Appellants had reliable evidence for the first time in discovery that J&J

Healthcare Systems, Inc. was in fact the entity that sold the products in question that were used on Mr. Phillips' surgery on September 15, 2021. This was contrary to statements made in discovery that only Ethicon Endo-Surgery had placed the Stapler and Staples into the stream of commerce. ROA.25-50116.277, ROA.25-50116.270-71.

During a ZOOM meeting with counsel for both parties on June 3, 2024, Appellants raised the issue of amending their pleading to include the additional sellers. ROA.25-50116.271. However, Appellants' trial counsel was given strong indications from counsel for Ethicon Endo-Surgery that if they filed their amended complaint adding J&J Healthcare Services, Inc., Ethicon US, LLC and Johnson & Johnson, that such action would detrimentally affect Ethicon Endo-Surgery's ability and authority to approve a settlement. ROA.25-50116.271. Based on that representation, Appellants held back on filing their Second Amended Complaint before the mediation set for June 26, 2024, out of desire not to jeopardize the mediation from achieving a settlement of the case. ROA.25-50116.272.

On June 6, 2024, the Magistrate Judge issued his Report and Recommendation, recommending dismissal of Phillips's claims without prejudice. ROA.25-50116.200. As such, Appellants understood that there

was an opportunity to cure any notice issue and refile. Appellants did so, issuing notice to all defendants and refiling the suit in state court in *Phillips II*. ROA.25-50308.23.

On June 13, 2024, Ethicon Endo-Surgery's trial counsel told Appellants that they intended to cancel the mediation. ROA.25-50116.272-73. Then, on June 18, 2024, Ethicon Endo-Surgery's trial counsel finally told Appellants that Ethicon US, LLC was also a seller in the chain. ROA.25-50116.272-73, ROA.25-50116.350-54. Thus, it was not until mid-June that Appellants had information on all the sellers in the chain at issue, and that information was inconsistent with prior discovery responses claiming that Ethicon Endo-Surgery was the *only* seller in the chain. ROA.25-50116.273.

The majority of the determinative discovery was done *after* Appellants amended their petition the first time, and *after* Ethicon Endo-Surgery filed its second motion to dismiss. Moreover, that discovery was inconsistent with earlier positions taken by Ethicon Endo-Surgery as to the identity of the sellers at issue. In other words, the delay in discovering the identity of the sellers at issue was not due to Appellants' lack of diligence. Appellants would have amended their suit to include these additional sellers had they known they were proper parties. *See* ROA.25-50116.357. And, Appellants

had provided timely presuit notice to the remaining Johnson & Johnson entities. This delay in providing relevant, discoverable evidence hampered Appellants' ability to timely file an amended complaint at an earlier date.

Then, once the true identify of all the sellers was obtained, and nearing the deadline to amend their petition, Appellants held off on amending their petition until after mediation at Ethicon Endo-Surgery's request to make a good faith effort at mediation. Ethicon Endo-Surgery laid behind the log on disclosing additional seller entities. In fact, Ethicon Endo Surgery took the position in the Rule 26 Report that it only sought to narrow the claims and dismiss Ethicon, Inc. and Johnson & Johnson as parties. ROA.25-50116.87. If Ethicon Endo-Surgery sincerely believed their motion to dismiss had merit, they should have filed a motion to abate discovery until their motion to dismiss was ruled on instead of actively participating in discovery through multiple depositions, scheduling a mediation, asking Appellants to delay amending their petition for mediation purposes, and then switching positions after the Magistrate's Report and Recommendation was issued.

Appellants moved to accept the Magistrate Judge's report and agreed that the claims should be dismissed without prejudice. ROA.25-50116.209. Ethicon Endo-Surgery filed its response, asking that the claims be dismissed

*with* prejudice. ROA.25-50116.221.  The district court ultimately agreed with Ethicon and found that Appellants (1) had not established presuit notice to Ethicon Endo-Surgery, and (2) had not alleged a defect. The district court then entered a Final Judgment dismissing all of Appellants' claims *with* prejudice on July 11, 2024. ROA.25-50116.233, ROA.25-50116.238.

Appellants asked the district court to reconsider its decision and asked for leave to file a Second Amended Original Complaint. ROA.25-50116.242, ROA.25-50116.357. The district court denied Appellants' motion and Appellants timely filed their Notice of Appeal. ROA.25-50116.449; ROA.25-50116.464.

## IV. Appellants file their second suit in state court with additional defendants.

On June 10, 2024, after the Magistrate Judge issued his Report and Recommendation recommending dismissal without prejudice, but before the district court issued its order, Appellants filed an original petition in Texas state court against Johnson & Johnson, Ethicon Endo-Surgery, Johnson & Johnson Health Care Systems, Inc., Ethicon US, LLC, (collectively, the "J&J

Defendants") and Methodist Hospital Hill Country[2] (the "*Phillips II*" suit).[3]
The J&J Defendants removed the case, alleging diversity of citizenship and
arguing that the only nondiverse defendant, the hospital, was fraudulently
joined because it was protected by the innocent seller statute. ROA.25-
50308.8. The J&J Defendants filed a motion to dismiss *Phillips II* as barred by
res judicata and collateral estoppel. ROA.25-50308.147. Upon the Magistrate
Judge's Report and Recommendation that the motion to dismiss be granted,
the district court entered a Final Judgment the *Phillips II*, dismissing
Appellants' claims with prejudice. ROA.25-50308.235, ROA.25-50308.237.
Appellants timely filed their notice of appeal on April 10, 2025. ROA.25-
50308.238.

And, the end result was that Ethicon Endo-Surgery, who is potentially
not even a seller based on Polivka's April 24, 2024 deposition testimony, got
dismissed for a lack of presuit notice, while the other legitimate seller
defendants, who did receive presuit notice, got to ride on Ethiocn Endo-

---

[2] In the pendency of *Phillips I*, HCMH changed names to Methodist Hospital Hill Country.
[3] Appellants had already served a presuit notice of their claim to Johnson & Johnson, J&J
Healthcare System, and Ethicon US, LLC. ROA.25-50308.119.

Surgery's coattails and were dismissed for res judicata when the district

court would not allow Appellants to amend their complaint.

## SUMMARY OF THE ARGUMENT

At all times during the pendency of *Phillips I*, Appellants were diligently attempting to learn who the proper sellers were of the Stapler and Staples used in Phillips's surgery. Instead of direct answers in discovery, Appellants got a bait and switch. Ethicon Endo-Surgery initially denied that any other Johnson & Johnson entities were sellers. And in fact, Appellants amended their petition to drop Johnson & Johnson and Ethicon, Inc. based on that understanding. It was nearly a year later, *after* Ethicon Endo-Surgery was the lone defendant, that Appellants discovered this was not the case – that Johnson & Johnson, J&J Healthcare Systems, and Ethicon US, LLC were also valid potential sellers.

At that point, it was too late. The Magistrate Judge entered his Report and Recommendation on Ethicon Endo-Surgery's motion to dismiss, recommending dismissal without prejudice. Dismissal without prejudice was acceptable to Appellants, as they would have an opportunity to provide presuit notice, refile their suit, and add the additional defendants. Instead, the district court dismissed Appellants' claims *with* prejudice, finding that (1) presuit notice had not been given, and (2) Appellants had not properly pled a defect to support the breach of warranty of merchantability claim. The

district court determined that Appellants already had one bite at the apple when they had initially amended their complaint to drop Johnson & Johnson and Ethicon, Inc. and to narrow the scope of their claims. As such, the district court reasoned that Appellants were either unwilling or unable to amend their complaint to properly allege a defect. The district court made this decision despite the fact that it had not previously ruled on a motion to dismiss or directed Appellants to amend their complaint on such basis. The district court's ruling is wrong for two reasons. First, the district court erred denying Appellants the opportunity to amend after ruling on the motion to dismiss. This runs contrary to the intent of Rule 15(a) to freely allow amendments. Second, because lack of presuit notice was a curable defect, the district court should not have dismissed Appellants' suit with prejudice.

Because the district court should have dismissed *Phillips I*, if at all, *without* prejudice, the *Phillips II* suit should not have been dismissed on res judicata or collateral estoppel grounds. Rather, Appellants should have been allowed the opportunity to cure any defect in presuit notice and to pursue their claims against all the proper defendant sellers.

## ARGUMENT AND AUTHORITIES

## I.    Standard of review.

The district court's grant of a motion to dismiss under Rule 12(b)(6) is reviewed de novo. *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993). The pleading stage is not the point at which Plaintiff must establish the level of proof necessary to ultimately prevail. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). "Although this framework is one-sided, the issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims. The other side will have its say later." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (emphasis added).

Indeed, a "strong framework of policy considerations . . . militate[s] against granting motions to dismiss for failure to state a claim[.]" *Kaiser*

*Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). A complaint should not be dismissed merely because it contains an imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014).

Thus, in the Fifth Circuit, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## II.  Appellants sufficiently stated a claim for breach of implied warranty of merchantability.

### A.  The foundational requirements to plead a breach of implied warranty of merchantability claim.

In diversity actions, the Court applies state substantive law and final decisions of the state's highest court. *Benitez v. AmGUARD Ins. Co.*, No. 24-20140, 2024 WL 4987246, at *2 (5th Cir. Dec. 5, 2024). A plaintiff successfully states a cause of action for breach of implied warranty of merchantability under Texas law by alleging:

1) the defendant sold or leased a product to the plaintiff;

2) the product was unmerchantable, that is, unfit for ordinary purposes;

3) the plaintiff notified the defendant of the breach; and

4) the plaintiff suffered injury.

*See Bedgood v. Nissan N. Am., Inc.*, No. A-16-CA-00281-SS, 2016 WL 3566689, at *2 (W.D. Tex. June 24, 2016); *Equistar Chem., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007). "In a products liability case, the implied warranty of merchantability is breached if the product was defective when it left the manufacturer's or seller's possession and was unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy." *Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 158 (Tex. App.—Texarkana 1997, writ denied). "The defect in an implied warranty of merchantability case means the condition of the goods that, because of a lack of something necessary for adequacy, renders them unfit for the ordinary purpose for which they are used." *Id.*

> A plaintiff in an implied warranty of merchantability case has the burden of proving that the goods were defective at the time they left the manufacturer's or seller's possession. He must show that the goods were unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy, i.e., because of a defect. A plaintiff does not, however, have to use direct or expert opinion evidence to show that the goods had a defect; he can instead meet his burden by using circumstantial evidence.

*Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989); *see also Cooper*

*Tire & Rubber Co. v. Mendez,* 204 S.W.3d 797, 800 (Tex. 2006).

## B.    Appellants adequately pled a claim for breach of an implied warranty.

"To overcome a 12(b)(6) motion to dismiss, a plaintiff need not provide detailed factual allegations" proving each element, but only enough to raise a *reasonable* expectation that discovery will reveal evidence of the necessary claims or evidence." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (emphasis added). Plaintiffs First Amended Original Complaint meets this reasonable federal pleading standard to allege a claim for breach of implied warranty of merchantability.

### 1.    Appellants alleged that Appellees sold them a product.

The products at issue, as identified in the complaint, are the "Ethicon Proximate Linear Cutter 75," (the Stapler), and "Stapler Linear 75 Reload Blue" (the Staples).  ROA.25-50116.127. The complaint identified that these products were designed, marketed, and sold by Ethicon Endo-Surgery to hospitals. ROA.25-50116.129. In particular, Ethicon Endo-Surgery sold its Stapler and Staples to HCMH on or about September 10, 2021, which purchased the products "for the purpose of creating functioning and non-leaking anastomoses in surgical patients." ROA.25-50116.129. HCMH in

turn billed the Stapler and Staples to Phillips on September 15, 2021, to be used in his surgery. ROA.25-50116.129. Thus, Appellants properly alleged that Ethicon Endo-Surgery sold him a product.

### 2. Appellants' alleged that the product was unmerchantable.

The Magistrate Judge and the district court concluded that Appellants' complaint raised no more than "'a sheer possibility' that the Stapler or Staple failure caused Phillips's injuries," and thus were insufficient to establish unmerchantability. ROA.25-50116.204. The Magistrate Judge hypothesized that the failed anastomosis could have been caused by other factors such as (1) improper placement, (2) improper diet, (3) exertion, or (4) trauma. ROA.25-50116.204. But, these other proposed possibilities are precluded by Phillips's factual allegations, which must be taken as true at the motion to dismiss stage. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) ("The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.").

First, Appellants specifically alleged that Dr. Love strictly followed the instructions for use when he used the Stapler and Staples during the surgery. ROA.25-50116.130. If the product was used properly, then there

would be no improper placement. *Plas-Tex*, 772 S.W.2d at 445 n.5. (stating that when a plaintiff relies on circumstantial evidence to establish a prima facie showing of a defect, the plaintiff should present evidence of proper use of the goods together with a malfunction).

Appellants also specifically alleged (1) that the anastomosis "failed in the staple line leaving a hole where bowel contents leaked out of Phillips's colon into his abdomen;" (2) that "the failed anastomosis in Phillips's large intestine [was] discovered during a second surgery performed on him on September 23, 2021;" and (3) that the failed anastomosis was "caused by the Stapler and/or Staples being unmerchantable and not being fit for the purpose of creating a functional and safe anastomosis." ROA.25-50116.131-32. Appellants alleged that there was no evidence of tension, torsion, ischemia, or bleeding. ROA.25-50116.128. And, the pathologist found there was a 2.0 x 2.0 cm transmural defect in the anastomotic staple line, a "staple line dehiscence". ROA.25-50116.128. She found no pathological abnormality of the tissue where the 2.0 x 2.0 cm transmural defect was located. ROA.25-50116.128. From those allegations, it follows that Phillips's failed anastomosis was observed by Dr. Love and tested by the pathologist and that the cause of the failed anastomosis was determined to be the failure of

the Stapler and/or Staples to create a proper anastomotic staple line.

The other proposed possibilities raised by the Magistrate Judge are precluded by this language. Improper placement, diet, exertion, or other trauma would show perhaps tears in the skin or other types of damage, but there was no such abnormality in the tissue. ROA.25-50116.128. And, Appellants factually allege what *was* shown – the failure of the Stapler and Staples themselves to create a proper anastomotic staple line. ROA.25-50116.128.

Appellants alleged that failed anastomosis was caused the Stapler and Staples being unmerchantable. "Unmerchantable" means a product is "unfit for its ordinary purpose."  And while an anastomosis could theoretically fail in a multitude of ways, practically speaking, a stapler can only fail in one way – by failing to close a staple. They only function in one way: pressure is applied on a lever that pushes a staple through material and then the staple prongs fold down and inward, creating a closed loop. If a stapler and staples do anything other than that, the products are not performing in the intended manner. So regardless of *how* the stapler and staples failed, the error is still the same. Thus, in alleging that  Stapler and Staples are "unmerchantable," Appellants have properly alleged that the failed anastomosis had only one

attributable cause – the Stapler and Staples failed to close properly.[4]

Plaintiffs are entitled to the benefit of the doubt in interpreting the scope of what is encompassed in the pleadings. The district court should have "accept[ed] the plaintiff's factual allegations as true and [made] reasonable inferences in the plaintiff's favor." *Burrell v. Allstate Prop.*, No. 3:13-CV-493-CWR-FKB, 2015 WL 12979204, at *1 (S.D. Miss. June 3, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, the district court required Appellants to plead with a level of specificity that went beyond the *Twombly* and *Iqbal* standard. Plaintiffs alleged specific facts that clearly show the product in question was properly used to create an anastomosis that would not fail or leak, that the Stapler and Staples were used by the surgeon in strict compliance with the instructions for use, and that the anastomosis failed due to a defect in the Stapler and Staples.  That pleading alleges exactly what is required for a successful recovery, in accordance with *Plas-Tex, Inc.*, 772 S.W.2d at 445.

---

[4] All the Johnson & Johnson entities at issue received presuit notice of the claims by May 18, 2023, and noted that "the reported information reasonably suggest[ed] that [the Stapler and Staples] may have caused or contributed" to Phillips's death. ROA.25-50116.480-482.  Thus, Ethicon Endo-Surgery knew of the product defect at issue and could not legitimately complain that Plaintiffs' First Amended Original Complaint did not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

**C.  The district court erred in denying Appellants an opportunity to amend.**

The district court, in adopting the Magistrate Judge's Report and Recommendation, took the position that Appellants had already had an opportunity to amend and cure any deficiencies in their complaint when they filed their First Amended Original Complaint. But, as shown above, this only tells part of the story. While it is true that there were two motions to dismiss filed, there was no order or ruling on the first motion to dismiss. Instead, Appellants amended their complaint and mooted the motion to dismiss. ROA.25-50116.125. Thus, there was not a ruling or order where a court considered any deficiencies in the pleading and gave Appellants an opportunity to amend.

However, the district court takes as fact that Ethicon Endo Surgery's first motion to dismiss put Appellants on notice of any deficiencies in its pleadings even *without* an order or ruling on that motion. But, Appellants were not required to take a defendant's word that the pleadings were deficient. That is a decision for the court to make, not the parties. Moreover,

per the scheduling order, Appellants still had until July 1, 2024 to amend their pleading. ROA.25-50116.93.

Thus, Appellants did not have notice that their pleadings were actually deficient until the Magistrate Judge's Report and Recommendation. And the Magistrate Judge correctly determined that Appellants should have an opportunity to refile their suit. The district court's decision to instead dismiss the suit *with* prejudice in effect gave Appellants *no* opportunity to cure or amend their pleadings.

Because Appellants' claims in *Phillips I* should have been dismissed, if at all, *without* prejudice, they should not have been barred from refiling suit in *Phillips II* after the dismissal.

### D.   Appellants should be allowed to correct any defect in presuit notice on refiling.

The only possible defect in Appellants' pleading is the lack of presuit notice to the only name Defendant, Ethicon Endo-Surgery. However, any such failure was a curable deficiency, and a dismissal with prejudice was not appropriate when Appellants could have cured the lack of presuit notice and refiled. In fact, that is exactly what Appellants did when the Magistrate Judge's report was issued.

Admittedly, presuit notice as described in *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 707 (5th Cir. 2014), was not given to Ethicon Endo-Surgery before the commencement of suit in *Phillips I*. However, Appellants had provided presuit notice to all the other potential Johnson & Johnson defendants, J&J Healthcare Systems and Ethicon US, LLC., which discovery had revealed were actually the proper parties. Thus, had Appellants been allowed to amend to add J&J Healthcare Systems and Ethicon US, LLC, as they later did in *Phillips II*, then those defendants would not have been dismissed for lack of notice.

As to Ethicon Endo-Surgery, the failure to provide presuit notice is curable on refiling after dismissal *without* prejudice. *See Foster v. Daon Corp.*, 713 F.2d 148, 152 (5th Cir. 1983) (holding that the trial court erred in dismissing with prejudice and that suit should be dismissed *without* prejudice to allow plaintiff an opportunity to correct her error in failing to provide presuit notice).

**III.   Because the district court erred in dismissing *Phillips I* with prejudice, the district court also erred in dismissing *Phillips II* on res judicata and collateral estoppel grounds.**

As discussed above, the district court should not have dismissed Appellants breach of implied warranty of merchantability claim with

prejudice. *Supra* Section II(C). The timing of the motions to dismiss and the related amendments are important.

Appellants' Original Complaint in *Phillips I* was filed on May 9, 2023. ROA.25-50116.11. At the time, Appellants had sued Ethicon Endo-Surgery, as well as Johnson & Johnson and Ethicon, Inc. Based on representations made in discovery from Ethicon Endo-Surgery, Appellants amended their complaint to drop Johnson & Johnson and Ethicon, Inc. as defendants. ROA.25-50116.107, ROA.25-50116.268-69. (discovery responses). Appellants also narrowed their liability claims to breach of implied warranty of fitness for a particular purpose and breach of implied warranty of merchantability. ROA.25-50116.107, ROA.25-50116.125.

However, there was no consideration of the first motion to dismiss by the district court, no order was issued on the motion to dismiss, and it was mooted by Appellants' amended complaint. *Sanchez v. KHBJR Enter. LLC*, No. SA-17-CV-00811-DAE, 2017 WL 10841345, at *1 (W.D. Tex. Nov. 15, 2017) ("The filing of an amended complaint, in most instances, moots a previously filed motion to dismiss."); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers

to and adopts or incorporates by reference the earlier pleading."). ROA.25-50116.125.

Ethicon Endo-Surgery then filed a second motion to dismiss. ROA.25-50116.149. At that point, the Magistrate Judge, and subsequently the district court, considered the merits of dismissal for the first time. But notably, this was not a "repeated" failure of the Appellants to cure deficiencies by previous amendment as determined by the district court. *See e.g., Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.").

As discussed above, the district court dismissed based on two issues: (1) lack of notice, and (2) a failure to plead a defect in the Stapler and Staples. ROA.25-50116.236.

Admittedly, the lack of notice was not curable by amendment. But, this Court's policy is to dismiss a pleading that lacks proper notice without prejudice, to allow a party the opportunity to cure on refiling. *Foster*, 713 F.2d at 152–53 ("[T]he district court's justifications for denying leave seem patently incorrect. … That Foster erred in failing to give notice the first time

is not a sufficient justification for denying her the opportunity to correct her error.").

The district court's second alleged error - failure to plead a defect - could be cured by amendment. And, Appellants appropriately requested leave to amend. ROA.25-50116.162.

Instead, the district court determined that one shot at amending Appellants' pleadings, unruled on by the court in any form, was sufficient to put Appellants on notice of the deficiencies in their pleadings and that Appellants should have no further opportunity to cure. In other words, Appellants were to take the opposing party's motion to dismiss at face value as determinative of the defects in their pleadings. This ruling runs contrary to this Court's longstanding policy on freely allowing the amendment of pleadings in the interests of justice. In *Dussouy*, , the Court held:

> 'Discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires'. It evinces a bias in favor of granting leave to amend. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.

660 F.2d at 597-98.

Since *Dussouy*, the Court has repeatedly held that Rule 15(a) evinces a liberal amendment policy. *See, e.g., Lowrey v. Texas A & M University System*, 117 F.3d 242, 245 (5th Cir. 1997) ("Rule 15(a) expresses a strong presumption in favor of liberal pleading"); *Nance v. Gulf Oil Corporation*, 817 F.2d 1176, 1180 (5th Cir. 1987) ("Federal Rule 15(a) counsels a liberal amendment policy"); *Youmans v. Simon*, 791 F.2d 341, 348 (5th Cir. 1986) ("The policy underlying Rule 15(a) is one in favor of liberal amendment."); *Foster*, 713 F.2d at 152 (the purpose of Rule 15(a) "is to assist the disposition of the case on its merits, and to prevent pleadings from becoming ends in themselves"); *Chitimacha Tribe of Louisiana v. Harry L. Laws Company, Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983) (district courts should err on the side of allowing amendments).

This was not a case where the district court considered a motion to dismiss, directed the plaintiff to correct such defects, and the plaintiff failed to do so after amending. Rather, Appellants here amended their pleading on their own initiative, to narrow the complaints at issue and to dismiss parties they understood to be improper. On the second motion to dismiss, the district court then determined that Appellants would have no opportunity to amend, even though this was the court's first consideration of dismissal.

If dismissal was appropriate for lack of notice, it should have been without prejudice. To dismiss with prejudice based on defects in Appellants' pleadings that were being considered and ruled on by the district court for the first time diverges from the purpose of Rule 15(a).

## Conclusion And Prayer

Appellants claims should be decided on their merits, not on pleading technicalities. And, Appellants should be given a full and fair opportunity to correct any defects in their pleadings in accordance with the district court's scheduling order and the liberal amendment standard under Rule 15(a). Instead, the district court denied Appellants any meaningful opportunity to amend after ruling on the merits of a motion to dismiss for the first time. As such, the district court's ruling run counter to the liberal federal pleading standards and Rule 15(a).

For these reasons, Appellants respectfully request that this Court reverse the district court's order granting the motion to dismiss in *Phillips I* with prejudice, reverse the district court's order in *Phillips II* dismissing the suit as barred by res judicata or collateral estoppel, and remand all of these claims back to the district court for further proceedings. Appellants ask for any further relief to which they may be entitled, in law or in equity.

Respectfully submitted,

By:  */s/ Shelby J. White*
Shelby J. White
State Bar No. 24084086
swhite@dpslawgroup.com
Thad D. Spalding
State Bar No. 00791708
tspalding@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 - Facsimile

Rockne W. Onstad
State Bar No. 15291000
rock@onstadlaw.com
THE ONSTAD LAW FIRM
11716 Shadestone Terrace
Austin, Texas  78732
(512) 820-0808 – Office
(512) 572-8218 -- Facsimile

and

Blake C. Erskine, Jr.
Federal Bar No. 27042
State Bar of Texas No. 00786383
berskine@erskine-blackburn.com
ERSKINE & BLACKBURN, PLLC
6618 Sitio del Rio Blvd.,
Building C-101
Austin, Texas  78730
(512) 684-8900 – Office
(512) 684-8920 – Facsimile

**COUNSEL FOR PLAINTIFFS-
APPELLANTS**

## CERTIFICATE OF COMPLIANCE

1.  This motion complies with the word limit of FED. R. APP. P.
    27(d)(2)(A) because, excluding the parts of the document exempted
    by FED. R. APP. P. 32(f),

    **X**  this motion contains 6,061 words, or

    __  this motion uses a monospaced typeface and contains
    _____ lines of text.

2.  This motion complies with the typeface requirements of FED. R. APP.
    P.  32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6)
    because:

    **X**  this motion has been prepared in a proportionally spaced
    typeface using **Microsoft® Word for Microsoft 365 MSO
    (16.0.14026.20202) 64-bit** in **14-point**, **Book Antiqua font**, or

    __  this motion has been prepared in a monospaced typeface using
    [state name and version of word processing program] with [state
    number of characters per inch and name of type style].

    */s/ Shelby J. White*_____
    Shelby J. White
    Attorney for Plaintiffs-Appellants
    Date:  **July 2, 2025**

### CERTIFICATE OF SERVICE

I hereby certify that on **July 2, 2025**, I electronically filed the foregoing document with the Clerk of the Court for the Fifth Circuit, using the electronic case filing ("ECF") system of the Court. All counsel of record were served via electronic service through the ECF system.

Timothy E. Hudson
tim.hudson@btlaw.com
Jake M. Winslett
jake.winslett@btlaw.com
Jenna Johnson
jenna.johnson@btlaw.com
BARNES & THORNBURG, LLP
2121 N. Pearl Street, Suite 700
Dallas, Texas 75201

*Attorneys for Johnson & Johnson, J&J Healthcare Systems Inc., and Ethicon, Inc., Ethicon Endo-Surgery, Inc.*

*/s/ Shelby J. White*
**Shelby J. White**